**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**TIHA WALMSLEY**                                                                 **PLAINTIFF**

**V.**                                    **No. 4:25-CV-00432-BSM-ERE**

**SOCIAL SECURITY ADMINISTRATION,**
**Commissioner**                                                                 **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommended Disposition ("RD") has been sent to United States District Judge Brian S. Miller. You may file objections if you disagree with the findings and conclusions set out in the RD. Objections should be specific, include the factual or legal basis for the objection, and be filed within fourteen days. If you do not object, you risk waiving the right to appeal questions of fact.

## I.    Background

On July 20, 2021, Ms. Tiha Walmsley filed an application for benefits due to fibromyalgia, autoimmune problems, back and neck pain, anxiety, depression, nerve pain, and cognitive problems. *Tr. 18, 80, 209*.

Ms. Walmsley's claim was denied initially and upon reconsideration. At Ms. Walmsley's request, an Administrative Law Judge ("ALJ") held a hearing on January 11, 2024, and the ALJ heard testimony from Ms. Walmsley and a vocational expert ("VE"). *Tr. 18, 48-79*. The ALJ issued a decision on April 2, 2024, finding that Ms. Walmsley was not disabled. *Tr. 18-32*. The Appeals Council

1

denied Ms. Walmsley's request for review, making the ALJ's decision the Commissioner's final decision. *Tr. 5-10.*

Ms. Walmsley, who was forty-seven years old at the time of the hearing, has a nursing degree and past relevant work experience as a charge nurse. *Tr. 55-56, 74.*

## II.   The ALJ's Decision[1]

The ALJ found that Ms. Walmsley had not engaged in substantial gainful activity since the alleged onset date of March 24, 2021. *Tr. 20.* The ALJ also concluded that Ms. Walmsley had the following severe impairments: left elbow epicondylitis, status post-surgery; left shoulder bicipital tendinitis; fibromyalgia; degenerative disc disease and lumbar spondylosis; degenerative joint disease of the cervical spine and spondylosis; thoracic spondylosis; ANA[2] positive; chronic pain syndrome; depressive disorder; generalized anxiety disorder; obsessive-compulsive disorder ("OCD"), and attention deficit hyperactivity disorder ("ADHD"). *Id.* However, the ALJ concluded that Ms. Walmsley did not have an impairment or

---

[1] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)-(g).

[2] Antinuclear Antibody test.

combination of impairments that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Tr. 22-24.*

According to the ALJ, Ms. Walmsley had the residual functional capacity ("RFC") to perform light work, with the following limitations: (1) no more than frequent bilateral overhead reaching; (2) no climbing ladders, ropes, or scaffolds; (3) no more than occasional climbing of ramps or stairs, stooping, crouching, kneeling, and crawling; (4) no concentrated exposure to excessive vibration, unprotected heights, and hazardous machinery; (5) can use judgment to make simple work-related decisions; (6) can maintain concentration, persistence, and pace for simple tasks; (7) can understand, carry out, and remember simple work instructions and procedures; (8) can adapt to changes in the work setting that are simple, predictable, and easily explained; and (9) occasional interaction with coworkers, supervisors, and the public. *Tr. 24.*

In response to hypothetical questions incorporating the above limitations, the VE testified that a substantial number of potential jobs were available in the national economy that Ms. Walmsley could perform, including cleaner and marker. *Tr. 31, 66, 75.* Accordingly, the ALJ determined that Ms. Walmsley was not disabled. *Id.*

### III.    Discussion

#### A.    Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and determine whether the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (citing *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). "Substantial evidence" in this context means "enough that a reasonable mind would find [the evidence] adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). In making this determination, the Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The Court will not reverse the Commissioner's decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

#### B.    Ms. Walmsley's Arguments for Reversal

Ms. Walmsley contends that the Commissioner's decision is not supported by substantial evidence, because the ALJ erred in: (1) the evaluation of the opinion evidence, resulting in an incorrect RFC; and (2) the assessment of Ms. Walmsley's subjective complaints. *Doc. 13.* After carefully reviewing the record as a whole, I recommend affirming the Commissioner.

4

## C.    Analysis

### 1.  Medical Opinions

Ms. Walmsley's numerous arguments essentially assert that the ALJ did not properly evaluate the medical opinions, resulting in an erroneous RFC.

Ms. Walmsley bears the burden of proving her RFC, which represents the most she can do despite the combined effects of [her] credible limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). "It is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own descriptions of his limitations." *Id*.

Ms. Walmsley alleges she has disabling mental impairments. However, her mental status examinations repeatedly showed minimal symptoms, such as: (1) denied depressed mood or difficulty sleeping and is stable with current medications; (2) no mental health complaints; (3) takes medications as directed; (4) maintains diet and exercise; (5) negative for anxiety, crying spells, depression, stress, sadness, sleep disturbance, or suicidal thoughts; (6) no acute distress, pleasant, alert, oriented, with good eye contact; (7) negative for depression; (8) fair insight and judgment and appropriate mood, affect, and attitude; and (9) intact recent and remote memory, good insight and judgment. *Tr. 859, 862, 867-869, 873-879, 1333-1334, 1365-1367, 1368-1369, 1377-1378.*

Although Ms. Walmsley had a brief hospitalization for a suicide attempt in 2020, it was before the relevant time period, and she later denied she would attempt suicide. *Tr. 734*. The ALJ also considered Ms. Walmsley's various daily activities, such as taking care of her family and animals, driving a car, preparing simple meals, doing household chores, shopping for groceries, swimming, and taking a road trip with girlfriends. *Tr. 23, 226-229, 862, 1305*. The ALJ properly determined that such daily activities undermine her claims of disability. *Andrews v. Colvin*, 791 F.3d 923, 929 (8th Cir. 2015); *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

Following a July 7, 2022 consultative examination, Dr. James Moneypenny wrote that Ms. Walmsley had chronic pain that interfered with all aspects of her life. *Tr. 425-429*. He also found that Ms. Walmsley was manifestly in distress, prone to being negative, and reported being under a lot of stress. *Id*. At the same time, Dr. Moneypenny noted Ms. Walmsley had unremarkable grooming and hygiene, was cooperative, had no problem with speech, was alert and fully oriented, denied perceptual abnormalities, and had no notable problems on the mental function examination. *Id*.

The ALJ found Dr. Moneypenny's opinion "not persuasive" and provided support for his conclusion.[3] *Tr. 29-30*. The ALJ noted that Dr. Moneypenny's

---

[3] The ALJ must "evaluate the persuasiveness of medical opinions by considering (1) whether they are supported by objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship that the source has with the claimant, (4) the source's

opinion was inconsistent with Ms. Walmsley's relatively normal mental status in the examination. *Id*. The ALJ also noted that other sources in the record showed intact memory and attention, as well as good comprehension. *Id*. This finding is consistent with the clinical notes of generally normal mental status examinations. Although Dr. Moneypenny said Ms. Walmsley's mental abilities were considered poor, the ALJ noted that this finding lacked explanation. The mental functioning findings also were inconsistent with Ms. Walmsley's daily activities. In any event, the RFC limited Ms. Walmsley to very simple and basic work, reflecting that the ALJ considered her mental difficulties. *Tr. 24*.

The two state-agency psychological consultants found severe mental impairments but concluded that Ms. Walmsley had only mild-to-moderate mental limitations, noting her ability to perform a variety of daily activities. *Tr. 86, 96*.

The ALJ found these opinions unpersuasive and vague.[4] *Tr. 29*. The ALJ recognized that Ms. Walmsley's symptoms and side effects would limit her and that her anxiety and depression would significantly affect her ability to interact with

---

specialization, and (5) any other relevant factors." *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)). However, "[t]he first two factors—supportability and consistency—are the most important." *Id*. (citing 20 C.F.R. § 404.1520c(a)). Pursuant to the regulations, "treating physicians are [no longer] entitled to special deference." *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(a)).

[4] The ALJ could have elaborated on the meaning of "vague," but brevity alone is not a cause for reversal. *Cropper v. Dudek*, 136 F.4th 809, 814-815 (8th Cir. 2025); *Martin v. O'Malley*, No. 2:23-cv-00052-PSH, 2024 WL 1414745, at *6 (E.D. Ark. Apr. 2, 2024). There is ample support in the record for the ALJ's conclusion.

others. With these limitations in mind, the RFC's workplace restrictions were greater than those suggested by the state agency consultants. *Tr. 24*. The ALJ properly considered the noted mental limitations, compared them to the balance of the evidence, and crafted an RFC that incorporated all of the credible limitations. *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003) (noting that an ALJ is not required to include limitations in the RFC that are not supported by the evidence in the record.").

Two state-agency medical consultants reviewed the records and issued opinions about Ms. Walmsley's physical functional capacity.[5] *Tr. 82, 93-94*. One found that she had no severe medical impairment that limited her ability to do physical work, and the other found degenerative disc disease to be a severe impairment and limited Ms. Walmsley to light exertional work. *Tr 82, 93-94.*

The ALJ found the initial consultant's opinion unpersuasive, after reviewing and relying on more recent medical reports showing that Ms. Walmsley had more significant impairments and limitations. *Tr. 28*. The ALJ referenced objective

---

[5] The records with respect to physical impairments did not suggest that Ms. Walmsley's impairments were disabling. For example, Ms. Walmsley had no musculoskeletal abnormalities at multiple medical appointments. *Tr. 312, 356, 360, 395-396, 528*. There are clinic notes showing she could stand up without assistance, had normal gait, and could walk on heels and toes. *Tr. 396, 423, 498*. She reported that fibromyalgia symptoms were stable with medication. *Tr. 374*. And she reported to her doctor that during the relevant time-period she was swimming a lot. *Tr. 862*. Also, she took an out-of-state trip with girlfriends. These facts weigh against her statements that she was physically disabled.

imaging and electromyography and a nerve conduction study which supported his findings that Ms. Walmsley had severe physical impairments. *Id*.

The ALJ found the second consultant's opinion partially persuasive. *Tr. 29*. The ALJ noted that records supported the conclusion that Ms. Walmsley could lift and carry up to 20 pounds (consistent with light work) but concluded that the objective testing records (electromyography and nerve conduction study) necessitated additional postural limitations in the RFC. *Id*.

Ms. Walmsley complains that the ALJ did not base the RFC on any treating or consultative opinion. Again, it is well-established that the ALJ need not rely on any particular opinion to assess the RFC. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (affirming RFC without medical opinion evidence); *Perks v Astrue*, 687 F.3d 1086, 1092-1093 (8th Cir. 2012). The ALJ evaluates the record as a whole and crafts an RFC incorporating credible limitations, not merely alleged limitations. Here, the RFC was more restrictive than the state agency consultants' suggestions.

The ALJ properly assessed the medical opinions, and the RFC reflected the limitations which the ALJ found to be credible.

### 2. Subjective Complaints

Ms. Walmsley alleges that the ALJ erred in assessing her subjective complaints, especially her alleged daily activities.

Normally, the Court should defer to an ALJ's assessment of a claimant's subjective complaints. *Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021). An ALJ's brevity is not reversible error so long as the ALJ's reasoning allows for "appropriate judicial review." *Id.* When evaluating the consistency between subjective complaints and the record as a whole, an ALJ considers, in addition to the objective medical evidence, various factors, including: a claimant's daily activities; the duration, frequency, and intensity of symptoms; the dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions. *See* Social Security Ruling 16-3p, 2017 WL 5180304, *2 (Oct. 25, 2017); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). A claimant's subjective allegations may be discounted if the evidence, as a whole, is inconsistent with the allegations. *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). In short, an ALJ may discredit some or all of the subjective statements in the record, based on a review of the above *Polaski* factors. The ALJ need not explicitly discuss each of the *Polaski* factors in the written decision if it is clear they were considered. *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004).

Ms. Walmsley asserts that the ALJ did not clarify the nature of her swimming when finding that her activities were inconsistent with her claim of disability. *Doc. 13*. The ALJ accurately noted that Ms. Walmsley swam a lot. *Tr. 28, 862.* Ms. Walmsley argues that, although she was swimming, it was not strenuous and the

10

ALJ incorrectly assumed that this meant she could perform to the level of the RFC. *Doc. 13; Tr. 862.* She states that despite swimming, her shoulder pain still impeded her. Yet, shoulder exams showed full range of motion and an x-ray showed no abnormalities. *Tr. 25-26, 336, 346, 377, 471, 528.* Additionally, Ms. Walmsley's doctor advised her to participate in incremental aerobic exercise, regular walking, water aerobics, bicycling, yoga, and Pilates. *Tr. 377-378.* In fact, Ms. Walmsley's doctors repeatedly recommend regular exercise and muscle strengthening. *Tr. 499, 515, 643, 867, 924, 928.* "A lack of functional restrictions on the claimant's activities is inconsistent with a disability claim where, as here, the claimant's treating physicians are recommending increased physical exercise." *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009). Additionally, as the ALJ acknowledged, Ms. Walmsley had the ability to perform activities of daily living consistent with the RFC. The ALJ repeatedly discussed the nature of Ms. Walmsley's pain and her positive response to medication and treatment. "An impairment which can be controlled by treatment or medication is not considered disabling." *Estes v. Barnhardt*, 275 F.3d 722, 725 (8th Cir. 2002).

The ALJ considered the relevant factors when deciding that Ms. Walmsley's subjective complaints were not entirely consistent with the record as a whole.

11

## IV. Conclusion

The ALJ applied proper legal standards in evaluating Ms. Walmsley's claims, and substantial evidence supports the decision to deny benefits.

IT IS THEREFORE RECOMMENDED that the Court affirm the decision and enter judgment in favor of the Commissioner.

Dated 8 April 2026.

_____
UNITED STATES MAGISTRATE JUDGE